THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:20-CV-00441

| | |
|---|---|
| NEW HORIZON GROUP HOME, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION; | ) ) ) ) ) ) |
| Defendant. | ) |

## **VERIFIED COMPLAINT**

NOW COMES Plaintiff New Horizon Group Home, LLC ("New Horizon" or "Plaintiff"), by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 7, hereby brings this Verified Complaint against Defendant North Carolina Department of Health and Human Services, Division of Health Service Regulation ("DHSR" or "Defendant"). Plaintiff seeks monetary and equitable relief for various causes of action related to DHSR's outrageous violations of Plaintiff's rights under the Constitution of the United States and federal law, which resulted in real and substantial damage to Plaintiff, including the closure of Plaintiff's treatment centers for approximately one year, caused Plaintiff to lose a multi-year, multi-million-dollar federal grant, and led to millions of dollars in monetary damage and other loss. Plaintiff alleges and states the following:

1

## INTRODUCTION

Plaintiff New Horizon Group Home, LLC is a well-established, minority-owned North Carolina business with an exemplary record of providing high-quality mental health and substance abuse services to vulnerable adults, adolescents, and children in North Carolinian for nearly fifteen years. In the past twenty months, however, New Horizon has suffered the effective closure of all its facilities for the majority of 2019, the loss of a multi-million-dollar federal grant (for which reimbursement has now been demanded), and unjust and repeated public vilification—all due to the illegal, vindictive, and grossly incompetent actions of Defendant North Carolina Department of Health and Human Services ("DHHS"), Division of Health Service Regulation ("DHSR"). The purpose of this lawsuit is to set the record straight regarding DHSR's wrongful and disparate treatment of New Horizon, expose DHSR's numerous and severe violations of New Horizon's federal and state constitutional rights, and recover substantial damages caused by DHSR's misdeeds.

In January 2019, amidst contentious litigation over a slate of draconian and grossly disproportionate penalties levied against one of New Horizon's five North Carolina facilities, DHSR inexplicably and mysteriously "lost" New Horizon's annual license renewal applications for its other four facilities. Rather than taking any one of a number of reasonable alternative options—such as working with New Horizon to locate the missing applications, accepting New Horizon's offer to immediately replace the missing applications, or issuing temporary licenses allowed for by North Carolina law—DHSR summarily terminated all four licenses, at least one of which had been

2

maintained since the company was founded. When appealed, the presiding Administrative Law Judge found that DHSR's justification for terminating New Horizon's licenses was invalid, that allowing the terminations to stand would be a "miscarriage of justice," and that DHSR's actions constituted a violation of New Horizon's rights and a violation of North Carolina law. Even faced with such a complete rejection of its actions, DHSR still delayed in issuing New Horizon's license renewals for **approximately three additional months**.

The fallout from DHSR's illegal and unreasonable actions was profound. First, DHSR's termination of these licenses forced New Horizon to close the four business operations associated with these licenses and forfeit their respective revenue streams for nearly all of 2019. Second, DHSR's actions left New Horizon without the license that it had relied on in applying for and winning a multi-million-dollar grant by the U.S. Department of Health and Human Services, Administration for Children and Families. Although the federal agency initially took a patient posture toward this issue, that patience ultimately failed to outlast DHSR's delay and obfuscation, resulting in cancellation of the grant and a demand for the return of millions of dollars in grant funds. Finally, to add insult to injury, a DHHS spokesperson made false statements to WRAL and other media outlets about New Horizon and its licensure. WRAL then failed to conduct proper due diligence on DHHS's statements and repeatedly published this false information in a series of news articles, leading to intense, unjust political criticism of New Horizon at the local, state, and even federal

3

levels and devastating reputational damage from which New Horizon is still suffering.

DHSR has violated both New Horizon's federal and state due process rights by terminating its licenses, which are required to do business in North Carolina, without any hearing, alternative application, provisional license, or any similar form of process. Further, DHSR violated New Horizon's federal and state equal protection rights through its irrational and disparate treatment of New Horizon's license renewal applications. Defendant should be held to account for the severe and ongoing damage it has caused due to its illegal and discriminatory treatment of New Horizon.

## **PARTIES**

1.      Plaintiff New Horizon Group Home, LLC is a North Carolina Limited Liability Company with its principal place of business in Raeford, North Carolina. New Horizon has provided both residential and out-patient services to North Carolinians with mental health and substance abuse issues for over fourteen (14) years.

2.      Defendant North Carolina Department of Health and Human Services, Division of Health Service Regulation is a division of a state agency that, among other things, oversees the licensure and operations of mental health and adult care facilities in North Carolina.

## **JURISDICTION**

3.      This Court has subject-matter jurisdiction over this action pursuant to the following statutes:

4

a. 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States;

b. 28 U.S.C. § 1343, as this action seeks equitable relief for the deprivation, under color of state law, of rights guaranteed under the Constitution of the United States;

c. 28 U.S.C. §§ 2201 and 2202, as this action seeks declaratory relief; and

d. 42 U.S.C. § 1988 and 28 U.S.C. § 1920, as this action seeks the award of costs and attorney's fees.

4. This Court has personal jurisdiction over Defendant, as DHSR is a division of a North Carolina state agency, and conducts its official business in Raleigh, Wake County, North Carolina, in the Eastern District of North Carolina.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### I. Background of Plaintiffs' Business and Licenses.

6. New Horizon is a North Carolina limited liability company established in 2004.

7. For over fourteen (14) years, New Horizon has operated facilities in North Carolina and provided a range of services for children, adolescents, and adults affected by mental health and substance issues.

5

8.      New Horizon is a minority-owned business, as its sole member is an African-American woman. The vast majority of New Horizon's staff are also African-American.

9.      Entering 2018, New Horizon held five (5) separate licenses from DHSR to provide various levels of treatment for mental health and substance issues within the state.

10.     New Horizon's first license, MHL-047-091, is associated with a Level III Residential Treatment facility in Raeford, North Carolina ("Level III License"). A Residential Treatment Level III facility "is one that is a free-standing residential facility that provides intensive, active therapeutic treatment and interventions within a system of care approach" for "children or adolescents who have a primary diagnosis of mental illness, emotional disturbance or substance-related disorders; and may also have co-occurring disorders including developmental disabilities." *See* 10A N.C. Admin. Code 27G.1701 (2019).

11.     New Horizon received its Level III License from DHSR in 2006, and has never been assessed a penalty or cited for any significant regulatory violation with respect to that license.

12.     New Horizon's second license, MHL-004-033, is associated with a Day Treatment facility in Wadesboro, North Carolina ("Day Treatment License"). A Day Treatment facility "is a day/night facility for children and adolescents who are emotionally disturbed which coordinates educational activities intensive treatment

6

while allowing the individual to live at home or in the community." *See* 10A N.C. Admin. Code 27G.1400.

13.     New Horizon received its Day Treatment License from DHSR in 2013, and has never been assessed a penalty or cited for any significant regulatory violation with respect to that license.

14.     New Horizon's third license, MHL-077-077, is associated with a Substance Abuse Intensive Outpatient Program and Substance Abuse Comprehensive Outpatient Treatment ("SAIOP/SACOT") facility in Rockingham, North Carolina. *See* 10A N.C. Admin. Code 27G.4400, 10A N.C. Admin. Code 27G.4500.

15.     New Horizon received its MHL-077-077 license from DHSR in 2015, and has never been assessed a penalty or cited for any significant regulatory violation with respect to that license.

16.     New Horizon's fourth license, MHL-004-040 is associated with a SAIOP/SACOT facility in Wadesboro, North Carolina (collectively, with its MHL-077-077 license, the "SAIOP/SACOT Licenses"). *See* 10A N.C. Admin. Code 27G.4400, 10A N.C. Admin. Code 27G.4500.

17.     New Horizon received its MHL-004-040 license from DHSR in 2015, and has never been assessed a penalty or cited for any significant regulatory violation with respect to that license.

7

18.     Entering the year 2018, the existing facilities associated with the Level III License, the Day Treatment License, and the SAIOP/SACOT Licenses, were fully operational and serving clients.

19.     These four (4) licenses enabled New Horizon to provide Medicaid services, and, in fact, the clientele of each of these four businesses consist almost entirely of Medicaid recipients.

20.     New Horizon's fifth license, MHL-078-318, was associated with a new, Level IV Residential Treatment facility in Lumber Bridge, North Carolina ("Level IV License"). New Horizon received its Level IV License from DHSR in 2017.

21.     A Level IV facility is an "intensive. . . 24-hour residential facility that provides a structured living environment within a system of care approach" for "children or adolescents who have a primary diagnosis of mental illness, severe emotional and behavioral disorders or substance-related disorders; and may also have co-occurring disorders including developmental disabilities." Level IV facilities are "physically secure," meaning that awake staff are on duty 24 hours a day and exterior doors are locked. *See* 10A N.C. Admin. Code 27G.1801.

22.     Upon opening, New Horizon's Level IV facility was to be one of only two Level IV facilities in the state, and the only one serving males.

II.     **Defendant Takes Draconian Action Against New Horizon's Level IV Facility, Resulting in Litigation.**

23.     Shortly after the Level IV facility opened, a dispute arose between two employees resulting in both employees being placed on leave without pay by New Horizon. Immediately afterward, a complaint was filed with the Robeson County

8

Department of Social Services about the Lumber Bridge facility. Upon information and belief, one of these individual employees filed the complaint in retaliation, falsely alleging that abuse was taking place at the facility.

24.     The Robeson County Department of Social Services conducted an initial investigation into the complaint and found no violations at the Lumber Bridge facility.

25.     On April 5, 2018, DHSR investigator Gloria Locklear unexpectedly arrived at the Lumber Bridge facility to conduct a follow-up investigation. Upon arrival, she initiated what she described as an "Annual Inspection," even though the facility had only been opened for only about forty-five (45) days. The notes from her investigation included interview statements from the Robeson County DSS investigator, who had concluded that "I don't think we will be able to substantiate anything around the abuse."

26.     Nevertheless, DHSR subsequently leveled severe and draconian penalties on New Horizon's Lumber Bridge facility.  On April 11, 2018, DHSR summarily suspended the Level IV License.  On 26 April 2018 DHSR issued a suspension of admissions, three Type A1 penalties, and a notice of intent to revoke the Level IV License.

27.     Defendant's letter conveying its intent to revoke New Horizon's license states that New Horizon had the right to demonstrate compliance prior to termination in accordance with N.C. Gen. Stat. § 150B-3(b) through the submission of: "a written statement asserting all of the reasons you contend you are in

9

compliance"; a "Plan of Correction" ("POC") which was to include "(a) measures in place to correct the deficiencies, (b) measures in place to prevent reoccurrence of the problem(s), and (c) who is monitoring and how often to ensure the problems will not re-occur"; or both.

28. New Horizon timely submitted a comprehensive POC on or about May 5, 2018. DHRS later admitted, however, that it failed to review New Horizon's POC.

29. DHSR's informal reviews of these decisions failed to produce any change in DHSR's position resulting in DHSR's June 1, 2018 letter revoking New Horizon's Level IV License.

30. New Horizon filed a contested case with the N.C. Office of Administrative Hearings on July 31, 2018 (matter number 18 DHR 04694) (the "Contested Case").

31. During the Contested Case, DHSR took extraordinary measures to frustrate discovery and delay the proceedings. For example, the presiding Administrative Law Judge concluded as follows in an order issued during litigation:

> Respondent [DHSR] failed to comply with the discovery deadline in the Undersigned's August 3, 2018 Scheduling Order by failing to complete discovery before November 26, 2018, and by failing to respond to Petitioner's August 27, 2018 discovery requests in a timely manner. Respondents' delay in responding to such discovery requests, its failure to request a valid Protective Order from the Undersigned in a timely manner, and its subsequent delay in producing a 350-page Non-Disclosure File to Petitioner two days before the December 20, 2018 hearing forced Petitioner to consent to a continuance of the December 20, 2018 hearing when Petitioner would not have otherwise consented. The undersigned hereby holds that the Respondent's actions, as noted above and detailed in Petitioner's Motion, were inappropriate, inexcusable, and constituted grounds for sanctions under 26 NCAC 03.0114.

10

32.     In addition, New Horizon learned during discovery in the Contested Case that DHSR had lost the "Non-Disclose File" ("NDF"), which contained the core documents and support for its adverse actions against New Horizon. One DHSR employee described the NDF by stating that "[o]ur whole case relies on that evidence."

33.     An internal report about the NDF written by Ms. Locklear states that:

> "[T]he NDF was not e-filed in its entirety. The NDF was presented to me by Pam and Jeanne on May 17, 2018, and it was immediately apparent to me the file had been <u>greatly compromised</u> due to the smaller size and missing documents/certificates which were contained within the original NDF. I was very uncomfortable searching through another staff office. I declined to participate in the search of her office. I reviewed the NDF again and there had been added multiple training certificates that would not have been part of the original NDF. It is impossible to discern the exact documents that were original to the NDF estimated on May 8, 2018. I am deeply concerned about the integrity of this NDF…"

(emphasis added).

34.     Upon information and belief, the full, original NDF was never found.

35.     Ultimately, the Administrative Law Judge issued a Final Decision on August 22, 2019 that did not reverse DHSR's action against New Horizon with respect to the Lumber Bridge facility.

36.     New Horizon filed a Petition for Judicial Review of the portion of the Final Decision regarding New Horizon's Level IV license, which is currently pending before Wake County Superior Court. *See New Horizon Grp. Home, LLC v. N.C. Dep't*

*of Health & Human Serv., Div. of Health Servs. Regulation*, 19 CVS 012643 (Wake County) ("Contested Case").[1]

## III. Defendant Retaliates Against New Horizon for the Contested Case by Mishandling Renewal Applications for Its Other Licenses.

### A. DHSR Arbitrarily and Capriciously Refuses to Process Renewal Applications for New Horizon's Licenses.

37.     In late 2018, while the Contested Case was pending, New Horizon's other licenses, including the Level III License, Day Treatment License, and SAIOP/SACOT Licenses, came due for their annual renewal for the following year. *See* N.C. Gen. Stat. § 122C-23 (requiring mental health services licenses to renewed on an annual basis).

38.     Historically, New Horizon has always submitted its renewal applications and fees in a timely manner.

39.     During the process of renewing New Horizon's licenses in late 2017 for the year 2018, it was discovered that DHSR lost New Horizon's applications. The applications were eventually found, and DHSR subsequently renewed New Horizon's licenses without interruption to its business.

40.     New Horizon had also experienced first-hand the fact that DHSR was often overwhelmed, backlogged, and tardy in issuing license renewals. As such, New Horizon had developed a protocol of waiting until the second week of January before inquiring about the status of license renewals that had not yet been received.

---

[1] DHSR's actions with respect to the Level IV License are not at issues in this Complaint, as they are the subject of separate litigation. However, reference to it is necessary for the purpose for providing factual context for Plaintiff's allegations and causes of action here.

41. New Horizon mailed its 2019 renewal applications and the associated fees to DHSR on or about November 21, 2018—more than one month before the December 31, 2018 deadline.

42. By the second week of January 2019, New Horizon had not received its renewed licenses from DHSR.

43. On or about January 9, 2019, New Horizon contacted DHSR by phone to inquire about the status of its license renewals, as was its typical practice. Dana Louise Reeves, an employee at DHSR, claimed that DHSR had not received New Horizon's renewal applications.

44. On or about January 10, 2019, New Horizon sent a follow-up email to Pam Pridgen, another DHSR employee, stating that it had copies of the previously-mailed applications and offering to hand-deliver copies of the applications and new checks to DHSR immediately.

45. On or about January 11, 2019, New Horizon called Ms. Pridgen to inquire as to whether the lost applications had been located, and to again offer to hand-deliver copies of the renewal applications and new checks to DHSR. Ms. Pridgen stated that she would have to seek guidance from her supervisor, Stephanie Gilliam, about how to proceed.

46. On or about January 14, 2019, New Horizon called Ms. Pridgen once again to inquire about the status of DHSR's search for the lost renewal applications. Ms. Pridgen stated that she had not been able to speak with Ms. Gilliam, who had been in meetings all day with a DHSR attorney.

13

47.     On or about January 15, 2019, Ms. Pridgen contacted New Horizon with Ms. Gilliam's decision to terminate New Horizon's licenses for failure to submit the annual re-certification documents.

48.     New Horizon received termination letters for its Day Treatment and SAIOP/SACOTS licenses on January 28, 2019—the same day a hearing was to be held in the Contested Case.

49.     On or about February 1, 2019, New Horizon filed an Amended Petition in the Contested Case which sought to add a challenge to DHSR's failure to renew the Day Treatment License and SAIOP/SACOT Licenses, and subsequent decision to terminate the licenses.

50.     On or about February 8, 2019, New Horizon received a termination letter for the Level III License, which was dated January 18, 2019.

51.     On or about February 18, 2019, New Horizon filed a Second Amended Petition in the Contested Case which sought to add a challenge to DHSR's decision to terminate the Level III License.

**B.     The Administrative Law Judge Concludes That DHSR Violated North Carolina Law and Prejudiced New Horizon's Rights, and Orders that the Terminated Licenses Be Renewed.**

52.     On August 22, 2019, the Administrative Law Judge in the Contested Case issued a Final Decision, which contained findings of fact and conclusions of law with respect to DHSR's decision to deny renewal and terminate New Horizon's licenses.

14

53.     The ALJ made the following findings of fact, which detailed the prejudice and incompetency with which DHSR had handled the Level III License, the Day Treatment License, and the SAIOP/SACOT Licenses:

a.      There was no evidence of any problems with the facilities associated with the withheld licenses, and the evidence supported a "reasonable inference" that the dispute concerning New Horizon's Level IV License prejudiced Ms. Gilliam's decision with respect to the other facilities.

b.      The only justification given by Ms. Gilliam for the decision—timeliness—was invalid.

c.      New Horizon's evidence that it had always been timely in submitting its renewal packets was credible.

d.      DHSR had not refuted evidence that it was on occasion tardy in issuing renewals.

e.      DHSR had a far less extreme option of issuing New Horizon provisional licenses under N.C. Gen. Stat. § 122C-23(e) if there was a technical issue with the license renewal applications, and it failed to do so.

54.     Based on its findings of fact, the ALJ concluded:

It would be a miscarriage of justice for the licenses to be revoked under the facts and circumstances of this contested case when, based on the evidence before this tribunal, Petitioner made a good faith effort to comply with the requirements to renew those licenses. She had never been tardy before in renewing. There is nothing in the history of these facilities of record which would tend to show that she would have been

15

unable to comply with licensing. In fact, just the opposite is true. There is nothing to show that these facilities presented an immediate threat to the health and safety of the individuals in those facilities. Petitioner would have been able to correct the non-compliance very quickly. And [DHSR] had not always been prompt in getting the licenses to the providers.

55.     The ALJ also concluded that "[t]he competent clear and convincing evidence has shown that Petitioner's licenses should not have been revoked. . . ."

56.     Finally, the ALJ concluded that "[i]n failing to allow Petitioner's applications to be processed, [DHSR] prejudiced Petitioner's rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

### C.     DHSR Fails to Appeal the ALJ's Final Decision, But Continues to Delay Issuing New Horizon's Licenses.

57.     DHSR did not appeal the ALJ's Findings of Fact or Conclusions of Law with respect to New Horizon's terminated licenses.

58.     Yet despite the ALJ's order reversing DHSR's decision, DHSR continued to delay issuing New Horizon's improperly terminated licenses.

59.     DHSR failed to even acknowledge its obligation to restore the licenses until nearly three weeks after the Final Decision was issued. Specifically, in approximately mid-September 2019, counsel for DHSR emailed counsel for New Horizon and asked whether it wanted to submit new licensure applications, or have DHSR use the original applications that had been made exhibits in the Contested Case.

16

60.     New Horizon requested that DHSR use the applications that were already in DHSR's possession and mailed new checks for the renewal fees as instructed by DHSR's counsel.

61.     After these communications, DHSR did not contact New Horizon or issue the improperly terminated licenses for **nearly two months**.

62.     In early November 2019, counsel for New Horizon requested a status update from DHSR. On or about 6 November 2019, a different attorney representing DHSR requested that New Horizon send in new applications to have the renewals processed. Subsequent correspondence confirmed that the DHSR attorney who communicated with New Horizon in September 2019 had failed to provide New Horizon's applications to DHSR as requested.

63.     Ultimately, New Horizon did not receive all of its renewed licenses until late November 2019—**over three months** after the ALJ's Final Decision mandating issuance of the licenses.

64.     DHSR backdated the reissued licenses to January 1, 2019, to make it appear that New Horizon held those licenses uninterrupted for the entirety of 2019. From a practical standpoint, however, DSHR's decision to withhold renewal of those licenses legally prohibited New Horizon from operating any of its treatment facilities associated with those licenses for nearly all of 2019.

**IV.     New Horizon Loses Multi-Million Dollar Federal Grant Due to DHSR's Wrongful Withholding of Level III License.**

65.     In October 2018, New Horizon became aware of a funding opportunity announcement ("FOA") by the U.S. Department of Health and Human Services

17

Administration for Children and Families ("ACF") to provide residential sheltering services for Unaccompanied Alien Children ("UAC").

66.     Among other requirements, the FOA required applicants to be "licensed or license eligible" by a state licensing agency "to provide residential, group or foster care services for dependent children." Awardees would be required to demonstrate licensure within seventy-five (75) days of being awarded a grant.

67.     New Horizon submitted an application in response to the FOA in November 2018, the same month it applied to DHSR for renewal of its Level III License. New Horizon's application included its Level III license and described its plan, if awarded a grant, to shift its operations to a consolidated expansion facility.

68.     On or about May 3, 2019, New Horizon was informed by ACF that it had been selected to receive a grant under the FOA (the "ACF Grant"), thus triggering a 75-day window to demonstrate compliance with the Grant's state licensure requirement.

69.     At the time, New Horizon was unable to demonstrate state licensure to ACF because DHSR had wrongfully withheld the renewal of its Level III License.

70.     New Horizon explained the status of its Level III License to ACF, which agreed to continue working with New Horizon while awaiting resolution of the Contested Case.

71.     Given the uncertainty surrounding New Horizon's Level III License, it submitted an application to the N.C. Department of Social Services for a residential childcare license (Level I/II License) on or about May 7, 2019 as a contingency, in

18

order to obtain a state license that would satisfy the ACF Grant's requirements ("DSS License").

72.     Further, pursuant to the requirements of the ACF Grant and in coordination with ACF, New Horizon proceeded with plans to secure and up-fit a facility to service the ACF Grant.

73.     To this end, New Horizon entered into a lease for a 20,000 square foot facility in Laurinburg, North Carolina, and properly began expending grant funds to bring the facility into compliance with ACF requirements, state licensing requirements, and local zoning regulations.

74.     On or about July 16, 2019—months after New Horizon amended its Petition in the Contested Case to challenge DHSR's termination of the Level III License, New Horizon learned from its Project Manager at ACF that DSS had told investigative journalists that New Horizon had no pending license application on file that would comply with ACF's requirements. In response, New Horizon hand-delivered a second copy of its license Level I/II application to DSS the next morning.

75.     By July 17, 2019, the ACF Grant's original 75-day deadline to demonstrate licensure, New Horizon had not yet received the ALJ's Final Decision in the Contested Case. However, ACF granted New Horizon an extension to demonstrate the required state license.

76.     During this extension, New Horizon continued properly expending ACF Grant funds to prepare the Laurinburg facility for receiving UACs once the Contested Case and Level III License issues were resolved.

19

77. After the ALJ's August 22, 2019 Final Decision reversing DHSR's decision to withhold and terminate the Level III License, DHSR improperly delayed its efforts to comply with the Final Decision and restore New Horizon's wrongfully terminated Level III License.

78. As described above, DHSR failed to issue New Horizon's Level III License as required by the ALJ until November 2019.

79. During a conference call on or about September 24, 2019, ACF expressed its intention to close the ACF Grant due to New Horizon's inability to produce a valid state license. New Horizon requested additional time to comply.

80. On December 3, 2019, New Horizon received letter from ACF stating ACF's decision to close the ACF Grant and terminate all funding effective February 1, 2020.

## V. DHSR's Wrongful Withholding of Level III License Causes New Horizon to Withdraw Re-Zoning Request.

81. On June 12, 2019, as part of its preparation to provide services to UACs under the ACF Grant, New Horizon applied to Scotland County to rezone its new Laurinburg facility for use as a residential childcare facility.

82. Specifically, New Horizon was required to obtain a zoning determination letter from the county, which assigned and approved the type of zoning necessary for the Laurinburg facility' intended use. The zoning determination sought by New Horizon was for a family childcare home.

83. On August 5, 2019, New Horizon received a letter from the Laurinburg Planning Department ("Planning Department") reversing its prior zoning

20

determination, and instructing that New Horizon would have to apply for a special use permit to use the new facility to provide residential child care.

84. On August 6, 2019, New Horizon responded to the Planning Department's letter, formally requesting a special use permit and seeking to clarify numerous erroneous impressions about New Horizon and the UAC Program, which New Horizon understood had informed the Planning Department's decision. A hearing on New Horizon's zoning request was scheduled for September 10, 2019.

85. Upon recommendation of the Planning Department, New Horizon contacted counsel for Laurinburg on or about August 24, 2019 to discuss its pending zoning application. New Horizon learned during the call that its special use permit would likely be denied unless New Horizon could produce an active license to provide the services associated with the permit. New Horizon also learned that if its application was denied, it would be required to wait for one (1) year before being able to reapply.

86. At the time, New Horizon could not provide the necessary license, as DHSR improperly delayed its efforts to comply with the Final Decision and restore New Horizon's wrongfully terminated Level III License until November 2019. Therefore, New Horizon was forced to withdraw its application for a special use permit.

87. Had DHSR not wrongfully terminated New Horizon's Level III License and subsequently delayed its efforts to comply with the ALJ's Final Decision, New Horizon could have produced the Level III License to the Planning Department and,

upon information and belief, would have been granted the necessary special use permit to operate the Laurinburg facility.

## VI. DHSR Provides False Statements to the Media Regarding New Horizon and Its Efforts to Obtain the ACF Grant, Which Are Used by WRAL and Others to Unfairly Malign New Horizon.

88.     Upon information and belief, multiple media outlets began investigating the ACF Grant awarded to New Horizon beginning in July 2019.

89.     On July 31, 2019, WRAL aired a story on its television broadcast and published an internet article on New Horizon titled "Unlicensed NC company with troubled history gets $4M to house migrant children." ("July Articles"). The article purported to be the result of an in-depth, thoroughly-researched investigation done in conjunction with an entity called Reveal, which is associated with the Center for Investigative Reporting.

90.     The July Articles falsely stated that New Horizon was "unlicensed" and had a "troubled history," and unfairly portrayed New Horizon as suspiciously unknown in its field, criticized the credentials of its employees, and questioned its suitability to provide services to UAC.

91.     The July Article also falsely stated that New Horizon "doesn't currently hold a residential child care facility license" and that "it never has." The July Article identifies the source of this information as DHHS spokesperson SarahLewis Peel.

92.     DHHS and Ms. Peel knew or should have known that the statements they made to WRAL were false, as New Horizon had held its Level III license, which

allows for the residential care of children, for nearly thirteen (13) years as of the time the July Article was published.

93.     Further, WRAL failed to perform the proper due diligence on DHHS's and Ms. Peel's statements, as, upon information and belief, information regarding New Horizon's licensure could have been obtained through a public records request.

94.     The July Article, and the false statements therein, created a false impression regarding the status of New Horizon's licensure. It also painted New Horizon in a falsely negative light, despite one of its sources stating that New Horizon's Level III facility "was one of the best in the state."

95.     For example, the July Article also discussed a Texas company that "lacks licenses for at least two new shelters it's planning in Texas, but does hold licenses for shelters it already runs for [the Office of Refugee Resettlement] in that state." WRAL failed to provide comparable analysis to the circumstances surrounding New Horizon's licenses.

96.     The July Article received approximately forty-seven (47) public comments. One comment wrongfully compared New Horizon's planned facility to a "concentration camp."

97.     The July Article was also discussed by a number of other North Carolina news outlets, including but not limited to WUNC, the Greensboro News & Record, the Winston-Salem Journal, and the Laurinburg Exchange. These outlets echoed WRAL's negative treatment of New Horizon and cited DHHS's and Ms. Peel's false

statements that New Horizon had never held the required license to operate a residential child care facility under the ACF Grant.

98.     WRAL published a second article on New Horizon on August 9, 2019, titled "State denies license for company that wants to house migrant children in NC," ("August Article"). The August Article was later updated on or about August 22, 2019.

99.     The August Article stated that "New Horizon didn't even apply for [the DSS L]icense, which the federal government says is required, until WRAL News started asking questions about the grant." This statement is false, as New Horizon had applied for the DSS License as a contingency on May 7, 2019, and WRAL represented that it did not start investigating New Horizon or the ACF Grant until early July.

100.    Upon information and belief, WRAL knew or should have known that its statement in the August Article regarding New Horizon's DSS License application was false. Further, WRAL failed to perform the proper due diligence on New Horizon's DSS License application, as, upon information and belief, information regarding the application could have been obtained through a public records request.

101.    The August Article also states that a social worker called the office of a local state legislator "after WRAL News' initial report, concerned that an unlicensed company with a troubled history had gotten such a grant." Upon information and belief, the social worker's impression that New Horizon was "unlicensed" was a direct result of the false statements made to WRAL by DHHS and Ms. Peel.

102.  WRAL published a third article on New Horizon on October 24, 2019, titled "Lawmakers demand answers over troubled company's $4M grant to house migrant kids." ("October Article"). This article once again repeated the false statements made about New Horizon by DHHS and Ms. Peel, and reported that North Carolina Congressman David Price had initiated a Congressional inquiry into the awarding of the ACF Grant to New Horizon.

103.  The October Article refers to New Horizon as "unlicensed," which is false. It also states that "New Horizon won the [ACF G]rant without a required state license," which not only misrepresents the ACF Grant's licensure requirements (which allow proof of licensure to be provided within seventy-five (75) days of the grant being awarded), but fails to provide the crucial context that DHSR had improperly terminated New Horizon's Level III License, which would have satisfied the ACF Grant.

104.  Most importantly, the October Article states that New Horizon had lost the Contested Case regarding its Level IV License, but completely omits the ALJ's findings that DHSR had "prejudiced [New Horizon]'s rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

105.  In sum, the false statements provided by DHHS and its spokesperson Ms. Peel, amplified by the false, negligent, and shoddy reporting of WRAL and others, completely undermined the reputation of New Horizon in the state of North Carolina, and likely contributed to the ultimate withdrawal of the ACF Grant.

106. Upon information and belief, had WRAL employed the proper due diligence, and not simply parroted DHHS's false statements, it could have exposed DHSR's wrongful conduct and violation of New Horizon's rights, and even pressured DSHR to comply with the ALJ's Final Decision, resulting in the timely restoration of New Horizon's Level III License.

## VII. New Horizon Suffers Catastrophic Damage to Its Businesses as a Result of the Withheld Licenses.

107. Due to DHSR's wrongful withholding and termination of New Horizon's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, New Horizon was unable to operate any of its treatment facilities for almost the entirety of 2019, and was deprived of all use and revenue associated with these facilities from early 2019 until approximately November 2019.

108. Even now that its licenses have been properly restored by the ALJ's Final Decision, New Horizon's losses are ongoing, as its facilities have struggled to recover from this significant interruption, and are still operating at levels far below the end of 2018.

109. Upon information and belief, New Horizon's current struggles are also due to the severe reputational damage caused by DHHS's false statements and WRAL's irresponsible reporting concerning the Contested Case.

110. As a result of DHSR's wrongful deprivation, and delayed reinstatement, of the Level III License, New Horizon was unable to comply with the licensure requirement of the AFC Grant, resulting in the forfeiture of that grant and its millions of dollars of associated funding.

26

111. As a further result of DHSR's wrongful deprivation, and delayed reinstatement, of the Level III license, New Horizon was unable to proceed with its application to the Laurinburg Planning Department for a special use permit, and lost the opportunity to develop its new facility in association with the ACF Grant.

112. As a result of the false statements made by DHHS to media outlets, and the failure of WRAL and others to properly diligence their reporting on this matter, New Horizon has suffered devastating and highly public attacks on its reputation and professional competence, which has significantly damaged its reputation and ability to generate future revenue.

## FIRST CLAIM FOR RELIEF
### Deprivation of Federal Due Process Rights
### (42 U.S.C. § 1983—U.S. Const. amend. V and XIV)

113. Plaintiff incorporates the previous paragraphs of its Complaint as if fully stated herein.

114. Federal law provides a cause of action against any individual or entity who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

115. The Fifth Amendment to the Constitution of the United States provides that a party cannot "be deprived of life, liberty, or property, without due process of law," (the "Due Process Clause"). The Fourteenth Amendment extends these protections to actions by individual states, prohibiting them from "mak[ing] or enforce[ing] any law which shall abridge the privileges or immunities of citizens of

the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."

116.    The Due Process Clause includes a procedural due process component, which "ensures a fair process before the government may deprive a person of life, liberty, or property," *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). The United States Supreme Court has consistently held that this protection requires "that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

117.    Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, which are required under North Carolina law to provide mental health, substance abuse, and other treatment, are a constitutionally cognizable property interest, as they are necessary for New Horizon to conduct business within the state.

118.    DHSR's improper failure to renew Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, and subsequent wrongful decision to terminate those licenses, constituted a state action which deprived New Horizon of its protected property interest.

119.    DHSR did not provide New Horizon with any hearing, alternative form of application, provisional license, or any similar form of process before deciding to terminate the Level III License, SAIOP/SACOT Licenses, and Day Treatment License.

28

120.    On August 22, 2019, the Administrative Law Judge in the Contested Case concluded, as a matter of law, that "[i]n failing to allow Petitioner's applications to be processed, [DHSR] prejudiced Petitioner's rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

121.    Further, after not appealing the ALJ's Final Decision in the Contested Case, DHSR nevertheless continued to delay issuing New Horizon's improperly terminated licenses, and failed to reissue those licenses until November 2019—more than three months after the Final Decision was issued.

122.    The procedures employed by DHSR in handling Plaintiff's license renewal applications were constitutionally inadequate, as they provided no method by which New Horizon could cure its purported failure to submit its applications. Further, DHSR's unilateral decision to delay issuing New Horizon's improperly terminated licenses involved no process whatsoever.

123.    All relevant actions taken by DHSR in this matter were under color of state law, as it is a division of DHHS, a state agency.

124.    Because its Level III License, SAIOP/SACOT Licenses, and Day Treatment License were wrongfully withheld and terminated by DHSR, New Horizon was unable to operate four (4) of its treatment facilities for almost the entirety of 2019, was deprived of the use and revenue associated with these facilities from early 2019 until approximately November 2019, and lost the AFC Grant, which deprived it of millions of dollars in associated funding.

29

125.     As a result of Defendant's violation of New Horizon's due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, New Horizon has been damaged, and continues to suffer ongoing damage, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Deprivation of State Due Process Rights
### (N.C. Const. art. I, § 19)

126.     Plaintiff incorporates the previous paragraphs of its Complaint as if fully stated herein.

127.     North Carolina case law recognizes "a direct action under the State Constitution against state officials for violation of rights guaranteed by the [Article I] Declaration of Rights." *Corum v. Univ. of North Carolina*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992).

128.     Article I, Section 19 of the North Carolina Constitution, which is part of the Declaration of Rights, states that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." This clause (the "Law of the Land Clause") is considered to be synonymous with the federal Due Process Clause. *See In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976).

129.     Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, which are required under North Carolina law to provide mental health, substance abuse, and other treatment, are a valid property interest, as they are necessary for New Horizon to conduct business within the state.

130.     DHSR's improper failure to renew Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, and subsequent wrongful

decision to terminate those licenses, constituted a state action which interfered with New Horizon's protected property interest.

131.     DHSR did not provide New Horizon with any hearing, alternative form of application, provisional license, or any similar form of process before deciding to terminate the Level III License, SAIOP/SACOT Licenses, and Day Treatment License.

132.     On August 22, 2019, the Administrative Law Judge in the Contested Case concluded, as a matter of law, that "[i]n failing to allow Petitioner's applications to be processed, [DHSR] prejudiced Petitioner's rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

133.     Further, after not appealing the ALJ's Final Decision in the Contested Case, DHSR nevertheless continued to delay issuing New Horizon's improperly terminated licenses, and failed to reissue those licenses until November 2019—more than three months after the Final Decision was issued.

134.     The procedures employed by DHSR in handling Plaintiff's license renewal applications were constitutionally inadequate, as they provided no method by which New Horizon could cure its purported failure to submit its applications. Further, DHSR's unilateral decision to delay issuing New Horizon's improperly terminated licenses involved no process whatsoever.

135.     Because its Level III License, SAIOP/SACOT Licenses, and Day Treatment License were wrongfully withheld and terminated by DHSR, New Horizon was unable to operate four (4) of its treatment facilities for almost the entirety of

2019, was deprived of the use and revenue associated with these facilities from early 2019 until approximately November 2019, and lost the AFC Grant, which deprived it of millions of dollars in associated funding.

136.    As a result of Defendant's violation of New Horizon's due process rights under the North Carolina Constitution, New Horizon has been damaged, and continues to suffer ongoing damage, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Violation of Equal Protection Clause**
**(42 U.S.C. § 1983—U.S. Const. amend. XIV)**

137.    Plaintiff incorporates the previous paragraphs of its Complaint as if fully stated herein.

138.    Federal law provides a cause of action against any individual or entity who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

139.    The Fourteenth Amendment to the Constitution of the United States prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

140.    DHSR's improper failure to renew Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, and subsequent wrongful decision to terminate those licenses, constituted irrational and arbitrary discrimination against New Horizon.

32

141.    Upon information and belief, DHSR's treatment of New Horizon was different than other similarly situated applicants for licenses to treat mental health and substance issues in North Carolina.

142.    In his Final Decision, which was issued on August 22, 2019, the ALJ found that "the failures of [New Horizon's] level IV Facility did influence the decision-making for the other four facilities." However, the ALJ found that "there is no pour-over effect from [the Level IV facility as] to whether the license for the four other facilities belong[ing] to Petitioner should be granted," and dismissed DHSR's arguments regarding the timeliness of New Horizon's application."

143.    Further the ALJ found that DHSR should have issued New Horizon a provisional license— "[a] simple remedy available to others who find themselves in the same predicament as Petitioner."

144.    Ultimately, the ALJ found that there was no rational basis for DHSR's failure to renew Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, and held as a matter of law that DHSR "prejudiced Petitioner's rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

145.    Because its Level III License, SAIOP/SACOT Licenses, and Day Treatment License were wrongfully withheld and terminated by DHSR, New Horizon was unable to operate four (4) of its treatment facilities for almost the entirety of 2019, was deprived of the use and revenue associated with these facilities from early

2019 until approximately November 2019, and lost the AFC Grant, which deprived it of millions of dollars in associated funding.

146. As a result of Defendant's violation of New Horizon's equal protection rights under the Fourteenth Amendment to the Constitution of the United States, New Horizon has been damaged, and continues to suffer ongoing damage, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Deprivation of State Equal Protection Rights
### (N.C. Const. art. I, § 19)

147. Plaintiff incorporates the previous paragraphs of its Complaint as if fully stated herein.

148. North Carolina case law recognizes "a direct action under the State Constitution against state officials for violation of rights guaranteed by the [Article I] Declaration of Rights." *Corum v. Univ. of North Carolina*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992).

149. Article 1, Section 19 of the North Carolina Constitution, which is part of the Declaration of Rights, states that "[n]o person shall be denied the equal protection of the laws, nor shall any person by subjected to discrimination by the State because of race, color, religion, or national origin." The Supreme Court of North Carolina "has held that the guarantee of equal protection provided in the Fourteenth Amendment to the Federal Constitution has been expressly incorporated in Article I, Section 19 of the N.C. Constitution, and thus the same analysis may be applied to both." *Toomer v. Garrett*, 155 N.C. App. 462, 476, 574 S.E.2d 76, 88 (2006) (citing *Richardson v. N.C.*

*Dep't of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996)) (additional citations omitted).

150.     As discussed above, DHSR's improper failure to renew Plaintiff's Level III License, SAIOP/SACOT Licenses, and Day Treatment License, and subsequent wrongful decision to terminate those licenses, constituted irrational and arbitrary discrimination against New Horizon, and the ALJ found that there was no rational basis for DHSR's actions.

151.     Further, the ALJ held as a matter of law that DHSR "prejudiced Petitioner's rights, acted erroneously, failed to use proper procedure, and failed to act as required by law or rule."

152.     Upon information and belief, DHSR's treatment of New Horizon was different than other similarly situated applicants for licenses to treat mental health and substance issues in North Carolina.

153.     Because its Level III License, SAIOP/SACOT Licenses, and Day Treatment License were wrongfully withheld and terminated by DHSR, New Horizon was unable to operate four (4) of its treatment facilities for almost the entirety of 2019, was deprived of the revenue associated with these facilities from early 2019 until approximately November 2019, and lost the AFC Grant, which deprived it of millions of dollars in associated funding.

154.     As a result of Defendant's violation of New Horizon's equal protection rights under the North Carolina Constitution, New Horizon has been damaged, and continues to suffer ongoing damage, in an amount to be determined at trial.

WHEREFORE, Plaintiff New Horizon Group Home, LLC prays unto the Court for the following relief:

1. That this Court assume jurisdiction over this matter;

2. That this Court find that Defendant North Carolina Department of Health and Human Services, Division of Health Service Regulation violated Plaintiff's due process rights under the Constitution of the United States and the North Carolina Constitution;

3. That this Court find that Defendant North Carolina Department of Health and Human Services, Division of Health Service Regulation violated Plaintiff's equal protection rights under the Constitution of the United States and the North Carolina Constitution;

4. Recovery by Plaintiff of compensatory, statutory, punitive, and other legally appropriate damages from Defendant, in an amount to be determined at trial, plus applicable fees, costs, and interest;

5. Recovery by Plaintiffs of their reasonable attorney's fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law;

6. A jury trial on all issues so triable; and

7. Such other and further relief as this Court deems just and proper.

Case 5:20-cv-00441-M   Document 1   Filed 08/18/20   Page 36 of 38

This the 18th day of August, 2020.

**SHANAHAN LAW GROUP, PLLC**

By:  _/s/ Brandon S. Neuman_
Kieran J. Shanahan, NCSB #13329
Brandon S. Neuman, NCSB # 33590
Andrew D. Brown, NCSB #45898
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
Facsimile: (919) 856-9499
kieran@shanahanlawgroup.com
bneuman@shanahanlawgroup.com
abrown@shanahanlawgroup.com
_Counsel for Plaintiffs_

## VERIFICATION

Barbara Brockington, as Chief Executive Officer of New Horizon Group Home, LLC, being first duly sworn, deposes and says that she has read the contents of the foregoing Complaint knows the contents thereof and that the same are true of her own knowledge, except as to matters stated upon information and belief, and as to those matters, she believes them to be true.

NEW HORIZON GROUP HOME, LLC

By: _Barbara Brockington_

Barbara Brockington, CEO

SWORN TO AND SUBSCRIBED BEFORE ME

This the 14th day of August, 2020.

_Signature_

Notary Public

Sabrina O. Leshore

Printed Name

My Commission Expires: 04/25/2023

SABRINA O LESHORE
NOTARY
PUBLIC
ROBESON COUNTY, NC